IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

| | |
|---|---|
| **SMART OIL, LCC,** | |
| Plaintiff, | |
| v. | Case No. 15 C 8146 |
| | Judge Harry D. Leinenweber |
| **DW MAZEL, LLC, and JEFFERY ZWICK & ASSOCIATES, in its Capacity as Escrow Holder only,** | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) [ECF No. 6]. For the reasons stated herein, the Motion is denied.

### I. BACKGROUND

The following facts are drawn from the allegations in the Complaint, and supporting documents attached to Defendants' Motion to Dismiss. Plaintiff, Smart Oil, LLC ("Smart Oil"), is a Delaware corporation with its principal place of business in Illinois. Its President and sole member, Mehmood Syed, is an Illinois citizen. In addition to Smart Oil, Syed serves as President of another Illinois company, Syed Brokerage & Capital Co. ("Syed Brokerage"). Syed Brokerage acts as a broker for

Plaintiff's business transactions. Defendant DW Mazel, LLC ("DW Mazel") is a New York company and is incorporated in Wyoming. David Ebrahimzadeh ("Ebrahimzadeh") is the President of DW Mazel and a citizen of New York. Defendant Jeffery Zwick & Associates ("Zwick Associates") acted as DW Mazel's escrow holder in New York.

Plaintiff, through Mehmood Syed, placed an advertisement on the Internet for the sale of certain property including numerous gas stations located within Illinois and Indiana. On February 12, 2014, Ebrahimzadeh contacted Syed in response to the online advertisement, and Ebrahimzadeh entered a non-disclosure agreement with Syed Brokerage. Syed and Ebrahimzadeh exchanged numerous communications over an approximately three-month period between February and April 2014. During this course of dealings, Plaintiff and Defendant communicated via phone, mail and email.

On May 1, 2014, Ebrahimzadeh met with Syed in person while attending a trade show in Chicago, Illinois. While in Chicago, Ebrahimzadeh also had a conference call with Syed and other business owners located in Illinois. Ultimately, on June 14, 2014, after months of communication, Ebrahimzadeh and Syed entered into a Purchase and Sale Agreement (the "June Contract") on behalf of Smart Oil and DW Mazel. The June Contract called for Smart Oil to convey to DW Mazel 25 properties located in Illinois and Indiana and for DW Mazel to make an initial deposit of $250,000 to

be followed by an additional $450,000 payment at a later date. Both of these transfers were to be made via Plaintiff's Illionis-based escrow holder, FATICO. DW Mazel transferred $250,000 to Zwick Associates, in escrow. Zwick Associates confirmed the deposit's transfer into escrow via an email addressed to both Ebrahimzadeh and Syed.

On July 11, 2014, the June Contract was voided due to a technicality. In November of 2014, Smart Oil and DW Mazel executed a redrawn contract (the "November Contract"), which increased the number of properties from 25 to 30 and the amount of the initial deposit to $300,000. DW Mazel transferred the additional $50,000 to Zwick Associates, the latter of which emailed both parties indicating the transfer. Smart Oil's escrow holder, FATICO, never received the funds from Zwick Associates.

Thereafter, Smart Oil filed a Complaint against DW Mazel and Zwick Associates alleging breach of contract and requesting: (1) $750,000, plus interest, in damages; (2) a declaratory judgment that the terms and conditions required for Zwick Associates to remit the initial deposit have been satisfied; and (3) an injunction directing Zwick Associates to transfer the initial $300,000 deposit, plus accrued interest, to Smart Oil. Defendants have moved collectively to dismiss for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2), and improper venue

under FED. R. CIV. P. 12(b)(3). The Court will address each legal contention in turn.

## II. LEGAL STANDARD

The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised on a motion to dismiss, the plaintiff need only make a *prima facie* showing of jurisdictional facts. *Felland v. Clifton,* 682 F.3d 665, 672 (7th Cir. 2012). We therefore accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff. *Id.*

A motion to dismiss under FED. R. CIV. P. 12(b)(3) grants a court the power to dismiss a complaint due to improper venue. When a defendant challenges venue, the plaintiff bears the burden of establishing proper venue. *Nat'l Tech. Inc. v. Repcentric Solutions,* No. 13 C 1819, 2013 WL 3755052, at *5 (N.D. Ill. June 16, 2013) (citing *Int'l Travelers Cheque Co. v. BankAmerica Corp.,* 660 F.2d 215, 222 (7th Cir. 1981)). In deciding a motion to dismiss for improper venue, all allegations are taken as true, unless contradicted by the defendant's affidavits. *See, Faulkenberg v. CB Tax Franchise Sys., LP,* 637 F.3d 801, 806 (7th Cir. 2011). The court may consider facts outside the pleadings, but must resolve any conflicts in the affidavits regarding relevant facts in the plaintiff's favor. *See, Purdue Research*

*Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003).

### III. ANALYSIS

#### A. Personal Jurisdiction

Plaintiff's Complaint alleges that Defendants entered into, and breached, a contract for the sale of property situated in Illinois. Despite these allegations, Defendants contend that they are not subject to personal jurisdiction in Illinois.

As the Seventh Circuit has succinctly described it, "federal personal jurisdiction is proper whenever the [defendant] would be amenable to suit under the laws of the state in which the federal court sits (typically under a state long-arm statute), subject always to the constitutional due process limitations encapsulated in the familiar 'minimum contacts' test." *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013); *see also, Citadel Group Ltd. v. Washington Reg'l Med. Ctr.,* 536 F.3d 757, 760 (7th Cir. 2008) ("A federal court . . . has personal jurisdiction only where a court of the state in which it sits would have such jurisdiction."). The Court therefore relies on Illinois law for its analysis.

"To determine whether personal jurisdiction exists over [a defendant] in Illinois, [the Court] consider[s] the Illinois long-arm statute, the Illinois constitution, and the federal constitution." *Citadel Group Ltd.,* 536 F.3d at 760. Under its

long-arm statute, 735 ILCS 5/2-209(c), Illinois allows for personal jurisdiction to the extent authorized by the Fourteenth Amendment's due process clause, thus merging the federal constitutional and state statutory inquiries. *Tamburo v. Dworkin,* 601 F.3d 693, 700 (7th Cir. 2010); *see also, Citadel Group Ltd.,* 536 F.3d at 760–61. Personal jurisdiction may be general or specific. *KM Enters., Inc.,* 725 F.3d at 732; *uBid, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 425 (7th Cir. 2010). Plaintiff does not allege that Defendants are subject to general personal jurisdiction in Illinois, so the Court will only address specific personal jurisdiction.

A non-resident defendant is subject to specific personal jurisdiction when he maintains minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 316 (1945). The connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State so as to invoke the benefits of its laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985); *see also, Asahi Metal Indus. Co., Ltd. v. Sup. Crt of Cal., Solano Cnty.,* 480 U.S. 102, 112 (1987) (defendant must "purposefully avail" himself of the forum state). The scope

of specific jurisdiction is limited to suits "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984).

With respect to interstate contractual obligations, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp.,* 471 U.S. at 473 (internal quotation marks and citation omitted). In analyzing these relationships, the United States Supreme Court has "emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" *Id.* (quoting *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316–317 (1943)). As such, it is those factors — "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" — that are determinative on the issue of purposeful availment. *Burger King Corp.,* 471 U.S. at 479; *cf. Bolger v. Nautica Int'l Inc.,* 861 N.E.2d 666, 671 (Ill. App Ct. 2007) (To determine purposeful availment in breach of contract cases, Illinois courts

look to: (1) prior negotiations; (2) the location of formation; and (3) the location of performance.).

Here, negotiations began between the parties when DW Mazel contacted Plaintiff about the sale of Plaintiff's land in February of 2014. These negotiations continued via email and phone over March and April of that year, and the president of DW Mazel furthered these negotiations during his visit to Illinois, where he met in person with Plaintiff. These dealings culminated in the June Contract. After the June Contract was voided due to a technicality, Smart Oil and DW Mazel renegotiated and entered into the November Contract (hereafter, collectively, the "Contracts").

Although the formation of the Contracts occurred in both Illinois and New York, performance under both called for Defendants to make payments to an escrow holder in Illinois. Furthermore, the Contracts concerned the sale of land located in Illinois. Purposeful availment is met when a defendant's activities "relate to the formation or performance of the contract" within that forum. *Wis. Elec. Mfg., Inc. v. Pennant Prods., Inc.*, 619 F.2d 676, 678 (7th Cir. 1980) (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)).

Defendants urge this Court to ignore the June Contract as irrelevant in our analysis, and apply the Seventh Circuit's analysis in *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272 (7th Cir. 1997). In that case, the court noted that a breach of

contract dispute should only contemplate past dealings related to that disputed contract, as opposed to other contacts with the forum state. *Id.* at 1278. However, the Seventh Circuit noted that "ongoing commercial relationship[s]" may be considered in determining whether a party has minimum contacts with the forum state. *Id*. (emphasizing there is no bright-line rule).

Despite Defendants' contentions to the contrary, the June Contract is very much an extension of an ongoing commercial relationship between the parties. The revised November Contract shares much in common with the June Contract: the Contracts are between the same parties, for the sale of land in Illinois, and require performance by Defendants in the form of payments made to Plaintiff's escrow holder in Illinois. The difference in the size of the initial deposit between the Contracts is negligible; the Contracts both call for the same payment of $450,000 after the initial deposit. Such ongoing negotiating of a contract with an Illinois resident for the sale of property located in Illinois clearly establishes purposeful availment to the laws of this state. *See, Burger King Corp.,* 471 U.S. at 475 (relying on "past dealings" to establish minimum contacts).

Moreover, even ignoring the existence of the June Contract, the Court finds minimum contacts have been established. DW Mazel entered into the November Contract to purchase 30 parcels of land located in Illinois. Defendants cannot seriously suggest that

entering into a contract to buy property in a state is not purposeful availment to the laws of that state. *Cf. Shaffer v. Heitner,* 433 U.S. 186, 218 (1977) (Stevens J., concurring) ("If I visit another State, or acquire real estate . . . in it, I knowingly assume some risk that the State will exercise its power over my property or my person while there. My contact with the State, though minimal, gives rise to predictable risks."). Moreover, the November Contract called for Zwick Associates, acting within its capacity as DW Mazel's escrow holder, to transfer the initial deposit of $300,000 and the additional $450,000 payment to Plaintiff in Illinois. Both of these transfers were to be made via Plaintiff's Illionis-based escrow holder, FATICO. Plaintiffs allege that Defendants failed to pay and transfer these funds. This is the basis of Plaintiff's breach of contract claim. Defendants' alleged breach is hardly a "random, fortuitous, or attenuated contact[]" with this state. *Keeton v. Hustler Magazine,* 465 U.S. 770, 774 (1984).

For all of these reasons, the Court concludes that Defendants purposefully directed their actions to, and within, the state of Illinois, thereby satisfying minimum contacts. *See, N. Grain Mktg., LLC v. Greving,* 743 F.3d 487, 493 (7th Cir. 2014) (defendant must "deliberately engage[] in significant activities within the forum state"). Similarly, the Court concludes that Defendants' contacts with the forum state make it reasonable to

litigate this case in Illinois.  *See, Froning & Deppe, Inc. v. Cont'l Ill. Nat'l Bank & Trust Co.,* 695 F.2d 289, 295 (7th Cir. 1982) (When interests favor adjudication in the forum state, it is reasonable to require a defendant to litigate in that state unless there is "an egregious absence of contacts, ties or relations between the defendant and the forum state.").

### B. Venue

While personal jurisdiction governs a court's power over a defendant, federal venue rules determine in which judicial district a suit should be heard. *KM Enters., Inc.,* 725 F.3d at 723-24. Pursuant to the federal venue statute, a civil action may be brought in "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Thus, venue may be proper in more than one district. *See, Armstrong v. LaSalle Bank Nat'l Ass'n,* 552 F.3d 613, 617 (7th Cir. 2009). If venue is improper, the court may either dismiss the suit or transfer it to a district in which the plaintiff could have filed it initially. *See,* 28 U.S.C. § 1406(a).

Defendants argue that the Northern District of Illinois is an improper venue because a substantial part of the November Contract occurred in New York: Defendants were located in New York during the majority of the negotiations, and the $300,000 deposit

originated with, and remains in, a New York bank. However, Defendants failed to deposit the funds with Plaintiff's escrow holder, FATICO, in Illinois. It is this failure to pay Plaintiff in Illinois that forms the basis of the breach of contract claim against Defendants. Moreover, the breach concerns a sale of 30 parcels of land in Illinois. Thus, a substantial part of the property subject to this litigation is located in Illinois. *See, TruServ Corp. v. Neff,* 6 F.Supp.2d 790, 792 (N.D. Ill. 1998) ("[V]enue is proper even though the defendants activities in another forum might be more significant.").

Finally, absent a strong argument to the contrary, venue is proper anywhere personal jurisdiction is established. 28 U.S.C. § 1391(b)(3). Personal jurisdiction has been established in this Court, and therefore venue is proper in the Northern District of Illinois.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss [ECF No. 6] is denied.

**IT IS SO ORDERED.**

 Harry D. Leinenweber, Judge
 United States District Court

Dated: 2/10/2016